IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : Crim. No. 1:11-CR-0200-01 |
| **v.** | : |
| | : *Judge Sylvia H. Rambo* |
| **JOHNNY VASQUEZ-ALGARIN** | : |

## M E M O R A N D U M

In this criminal case, Defendant was charged with two counts related to his alleged participation in a conspiracy to distribute cocaine hydrochloride in the Middle District of Pennsylvania. (Doc. 1.) Presently before the court is Defendant's motion to suppress, wherein he seeks suppression of the physical evidence seized from the residence at 142 North 13th Street, Harrisburg, Pennsylvania, and his statements made thereafter. (Doc. 170.) Because the court finds that the law enforcement officers made a constitutional entry into the residence and that Defendant's statement was made knowingly, voluntarily, and intelligently, the court will deny Defendant's motion to suppress in its entirety.

## I. Background

On June 8, 2011, Defendant and his two brothers, both of whom have already pleaded guilty, were charged in a two count indictment related to their participation in a conspiracy to distribute cocaine hydrochloride. (*See* Doc. 1.)[1] Defendant pleaded not guilty to the charges on October 8, 2013 (Docs. 144 & 145), and a jury trial is scheduled to commence on May 5, 2014 (Doc. 167).

---

[1] The two counts contained in the June 8, 2011 indictment are as follows: (1) Count 1- criminal conspiracy to distribute and possession with intent to deliver cocaine hydrochloride, in violation of 21 U.S.C. § 846; and (2) Count 2- distribution and possession with intent to deliver cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii). (Doc. 1.)

On April 16, 2014, Defendant filed the instant motion to suppress evidence (Doc. 170) and brief in support (Doc. 170), and the court scheduled a hearing on the matter to be held April 25, 2014 (Doc. 181).  Defendant's motion is premised on his position that the evidence underlying the charges was found following an unconstitutional entry into his home and must therefore be suppressed. It is uncontested that law enforcement officers entered the residence at 142 North 13th Street without first securing a search warrant for the premises.  However, because the credible evidence presented at the hearing satisfies the court that the law enforcement agents entered the home having probable cause to believe a fugitive was a resident of and present at the dwelling at the time of their entry, the court will deny Defendant's motion to suppress.

At the suppression hearing, the Government presented the testimony of three witnesses.  Deputy United States Marshal Gary Duncan, a member of the Dauphin County Fugitive Task Force, testified that on October 18, 2010, he was attempting to apprehend a fugitive from justice, Edwardo Rivera, who had an outstanding arrest warrant to answer homicide charges.  Marshal Duncan testified that he received reliable information from other law enforcement officers, which was corroborated by street informants, that Rivera resided at 142 North 13th Street, Harrisburg, Pennsylvania.  Marshal Duncan was assisted by numerous local law enforcement officers, including Officer Dennis E. Morris of the Dauphin County Drug Task Force, for assistance in apprehending Rivera.

The officers surrounded the building located at 142 North 13th Street, which is multi-unit apartment building.  The officers knocked on the doors and windows of the specific unit in which Rivera was believed to be located and

identified themselves as police for several minutes. Despite no response, Marshal Duncan observed several indicators tending to support that someone was nevertheless inside the building. Specifically, Marshal Duncan testified that he saw movement inside the apartment, heard a phone ring twice but then be manually silenced, and heard a dog barking but then stop as if it was muzzled. Thus, Marshal Duncan reasonably formed the belief that the resident of the house, whom he believed to be Rivera, was inside but was refusing to answer law enforcement officers' demands that he surrender.

Based on the foregoing, Marshal Duncan breached the door and entered the apartment, at which time he saw the sole occupant of the apartment, who was ultimately identified as Defendant. Rivera was not present.

While performing a protective sweep, Officer Morris saw in plain view a kitchen plate with white powder that he suspected to be cocaine, a razor blade, and plastic sandwich bags. Officer Morris verbally gave Defendant Miranda warnings in English and Officer Ben Stewart, another officer of the Dauphin County Drug Task Force, gave Defendant Miranda warnings in Spanish. Defendant agreed to speak with the officers and never asked for an attorney. Defendant denied consent to search, and Officer Morris ultimately obtained a search warrant for the premises.

During the search pursuant to the search warrant, Marshal Duncan found a cellular phone in Defendant's bedroom.[2] Based on his training and

---

[2] The court finds that the master bedroom belonged to Defendant. In reaching this conclusion, the court relies in part on the receipt of payment and summons for Defendant found therein. The court rejects Defendant's position that he did not reside at this residence. Defendant's version that he had moved was not credible, inasmuch as he could not identify key details related to his alleged other residence, and was the individual on the lease of the the 142 North 13th Street residence and kept possessions therein.

experience, and upon consideration of the other evidence found at the residence pursuant to the search warrant, such as cocaine, glasseen bags, unused heroine bags, ammunition, and hundreds of small black bands used to package heroin, Officer Morris obtained a search warrant for the cellular phone. (*See* Gov. Ex. 2, admitted at Hearing, April 25, 2014.)

Defendant testified on his own behalf. Defendant's testimony, which the court found far less credible than that of the Government's witnesses, was inconsistent. According to Defendant, despite his being on the lease, he no longer resided at the house located at 142 North 13th Street; however, he was unable to provide details regarding his address at the time. Defendant testified that, on the date in question, he received a phone call from the landlord, indicating there was a problem with the electricity. Defendant entered the house with a key he had for the back door, and was greeted by his dog that he had left at the residence despite allegedly moving. Defendant testified that he went directly to the basement and was there for ten to fifteen minutes. Defendant recalls hearing the dog bark upstairs. Despite testifying that he was unable to hear the numerous agents banging on the doors and windows, Defendant testified that he heard the drill used by Marshal Duncan to breach the door, which prompted Defendant to come upstairs thinking his landlord had arrived. Defendant confirmed that he was advised of his rights in English and Spanish before he was questioned. Defendant testified that he did not know Rivera and Rivera did not live in the house while he lived there. Defendant testified that he consented to the officers' request that they search the residence. This, of course, is belied by the testimony of the officers and the fact that the officers obtained a search warrant after they encountered Defendant.

## II. Discussion

Defendant moves to suppress the items seized on October 18, 2010, as fruits of an illegal search. As noted, Marshal Duncan had an arrest warrant for Rivera and a reasonable belief that he resided at the 142 North 13th Street address. Defendant essentially contends that the Rivera arrest warrant could not have authorized the warrantless entry of Defendant's apartment absent consent or exigent circumstances, neither of which existed under the facts as Defendant presents them. The Government argues that the Rivera arrest warrant justified the officers' entry into Defendant's apartment because the officers had a reasonable belief that Rivera resided in the 142 North 13th Street apartment. The court agrees with the Government.

The issue presented herein is whether the arrest warrant for Rivera could have justified entry into the North 13th Street address where the officers reasonably, but mistakenly, believed Rivera resided there and was then inside. The court answers this question in the affirmative. The Fourth Amendment prohibition against unreasonable searches forbids police officers from entering private homes without warrants in order to conduct searches or to make arrests absent consent or exigent circumstances. *Payton v. New York*, 445 U.S. 573 (1980). However, once armed with an arrest warrant, a police officer may enter a fugitive's residence in order to apprehend him, even without the authority of a search warrant, as "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id*. at 603. "If there is sufficient evidence of a citizen's participation in a

felony to persuade a judicial officer that his arrest is justified, it is constitutionally reasonable to require him to open his doors to the officers of the law." *Id*. at 602-03.

As Defendant emphasizes, the facts show that Marshal Duncan attempted to arrest Rivera not in his own apartment, but rather in the apartment of Defendant. It is well-settled that absent consent or exigent circumstances, the police could not enter a third party's home without a search warrant even in order to apprehend the suspect of an arrest warrant. *See Steagald v. United States*, 451 U.S. 204, 213 (1981). However, a warrantless entry may be lawful where the police had reasonable grounds for believing the fugitive resides in the house. *Bratton v. Toboz*, 764 F. Supp. 965 (M.D. Pa. 1991) (holding, in a Section 1983 action, that a police search of a third party's home in which a fugitive had not been found was constitutionally permissible where the police had reasonable grounds for believing the fugitive resided in the house). Where police lack probable cause to believe the fugitive is an actual resident, but have probable cause to believe only that the fugitive is present, the police must first secure a search warrant before entering the home. *Shea v. Smith*, 966 F.2d 127, 131 (3d Cir. 1992).

Unlike the police in *Steagald*, who relied on the arrest warrant as legal authority to enter the home of a third person based on their belief that the fugitive might be a *guest* there, the factual situation presented by this case establishes that Marshal Duncan had not identified 214 North 13th Street as a third party's premises, inside of which might be the fugitive Rivera. Rather, the law enforcement officers entered the building and the apartment under the belief that Rivera *resided* therein. Marshal Duncan testified that he belief Rivera resided at the 214 North 13th Street address, and the court credits his testimony. The court accepts the reasonableness of

Marshal Duncan's belief, as it was based on information he believed was reliable and corroborated by other law enforcement officers and street informants. Moreover, after arriving at the address, the law enforcement officers observed several indicia that would establish an individual was inside the house. "[T]he Fourth Amendment requires that the police have probable cause, or at least reasonable suspicion, to believe that the subject of the warrant is *actually present* in the residence when they execute the warrant. *Fullard v. City of Phila.*, Civ. No. 95-cv-4949, 1996 WL 195388, *12 (E.D. Pa. Apr. 22, 1996) (citing *Payton*, 445 U.S. at 603). Here, Marshal Duncan testified that it is not uncommon for the subject of an arrest warrant to refrain from answering the door for law enforcement officers. Furthermore, the law enforcement officers heard a phone ring and be manually silenced and heard a dog bark and then suddenly stop as if it had been muzzled. Moreover, Marshal Duncan testified that he saw movement inside the house. These factors provided a reasonable basis for the officers to conclude that there was an occupant actually present in the house, and based on the information known to Marshal Duncan at the time, provided a reasonable basis to believe that the individual inside the house was, in fact, Rivera.

Given that the court concludes that Marshal Duncan reasonably believed that Rivera presently resided in the apartment at 142 North 13th Street and that Defendant was present in the house in the morning of October 18, 2010, the court determines that the officer's entry did not violate any constitutional rights of Defendant, notwithstanding that Marshal Duncan's belief was ultimately incorrect. Accordingly, Defendant's motion seeking to suppress all evidence as the product of an unlawful initial entry will be denied.

Defendant further argues that the search of the cellular phone was unlawful because the officers did not obtain a warrant. This argument is unsupported. At the suppression hearing, the Government presented both the affidavit of probable cause in support of an application for a warrant to search the contents of the cell phone and the warrant issued by a neutral and detached magisterial district judge. Thus, the search of the phone was, in fact, executed pursuant to a warrant, which has not otherwise been challenged. Accordingly, Defendant's motion to suppress the contents of the search of the phone based on a warrantless search will be denied.

Lastly, Defendant argues that his statements from October 18, 2010 should be suppressed because he did not waive his Miranda rights and requested counsel. The evidence presented at the suppression hearing – including Defendant's own testimony – clearly demonstrates this claim is entirely meritless. On direct examination, Defendant testified that the he was given his Miranda warnings before he was asked any questions by the officers, and that he understood the warnings despite his complaints of Officer Stewart's poor ability to speak Spanish. Furthermore, there was no evidence presented that Defendant requested to speak to an attorney. In fact, Officer Stewart specifically testified that Defendant never asked for an attorney. Accordingly, the record demonstrates that Defendant was given and understood the Miranda warnings and voluntarily, knowingly, and intelligently waived them. Therefore, his statements given on October 18, 2010 will be admitted and his request to suppress them will be denied.

**III.     Conclusion**

Because the law enforcement officers had a reasonable belief that the apartment at 142 North 13th Street was then occupied by Rivera, it was proper for them to enter the dwelling armed only with an arrest warrant for Rivera. That the officer's reasonable belief was mistaken does not change this conclusion. Furthermore, the cellular phone was searched pursuant to a warrant, and therefore, the search was not unreasonable. Lastly, Defendant received, understood, and waived his Miranda rights on October 18, 2010, and therefore, the statements he made are admissible at trial. Accordingly, Defendant's motion to suppress will be denied in its entirety.

An appropriate order will issue.

  s/Sylvia H. Rambo  
United States District Judge

Dated: April 28, 2014.